## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLANIA

----------------------------------------------------------------

| | |
|---|---|
| WILLIAM CRAIG VERANI<br>68 Centennial Road<br>Warminster, PA 18974 : | CIVIL NO. _____ |
| : | |
| Plaintiff, : | |
| : | **JURY TRIAL DEMANDED** |
| v. : | |
| : | |
| LEIDOS, INC. :<br>1750 Presidents Street, Suite 100 :<br>Reston, VA 20190 : | |
| : | |
| Defendant. : | |

----------------------------------------------------------------

## COMPLAINT – CIVIL ACTION

Plaintiff, William Craig Verani ("Plaintiff"), by and through his undersigned attorneys, for her Complaint against Defendant Leidos, Inc. ("Defendant"), alleges as follows:

## INTRODUCTION

1.     Plaintiff brings this Complaint contending that Defendant has violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §951, *et seq*. As a result, Plaintiff has suffered damages set forth herein.

## PARTIES

2.     Plaintiff, William Craig Verani, is a citizen of the United States and Pennsylvania, and currently maintains a residence at 68 Centennial Road, Warminster, PA 18974.

3.     Defendant, Leidos, Inc. is a for-profit corporation that maintains a principal place of business located at 1750 Presidents Street, Suite 100, Reston, VA 20190..

## JURISDICTION AND VENUE

4.      On or about September 30, 2025, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), thereby satisfying the requirements of 42 U.S.C. § 2000e5(b) and (e). Plaintiff's EEOC Charge was docketed as EEOC Charge No. 570-2025-00738.  Plaintiff's EEOC Charge was filed within one hundred and eighty (180) days of the unlawful employment practice.

5.      By correspondence dated May 4, 2026, Plaintiff received a Notice of Right to Sue from the EEOC regarding his Charge, advising that Plaintiff had ninety (90) days to file suit against Defendant.

6.      Plaintiff filed the instant action within the statutory time frame applicable to his claims.

7.      Plaintiff has therefore exhausted his administrative remedies and has complied with all conditions precedent to maintain this action.

8.      This is an action authorized and instituted pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*

9.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

10.     This Court has pendant jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367, as those claims arise out of the same common nucleus of operative fact as his federal claims.

11.     The venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as the Defendant resides in this judicial district, doing business therein, and the unlawful practices of which Plaintiff is complaining were committed in the state of Pennsylvania.

**FACTUAL BACKGROUND**

12.    Paragraphs 1 through 13 are hereby incorporated by reference as though the same were fully set forth at length herein.

13.    In or around August 2019, Plaintiff was hired by Defendant in the position of Temporary Operations Supervisor.

14.    Throughout the course of Plaintiff's employment with Defendant, Plaintiff performed his job well, received positive feedback regarding his performance, and was subjected to no justifiable discipline.

15.    In or around January 2020, Plaintiff was promoted to the position of Operations Manager due to his successful job performance.

16.    Plaintiff's job responsibilities included, but were not limited to, overseeing assigned supervisors and cases assigned to his staff, as well as monitoring production for scheduling and phone metrics.

17.    In or around the fall of 2024, Plaintiff started to feel targeted and singled out due to his age.

18.    Plaintiff was sixty-one (61) years old at the time,

19.    Plaintiff specifically felt targeted and singled out by Defendant's Associate Director of Operations, Renee Montgomery ("Ms. Montgomery").

20.    Plaintiff was one (1) of five (5) Operations Managers, and significantly the oldest.

21.    The other Operations Managers included Ria Smith (approximately early thirty (30) years old), Michael Fitnich (approximately early thirty (30) years old), Ty McNeil (approximately early forty (40) years old), Marabel Le (approximately early forty (40) years old), and Marcus Yacenthe (approximately early thirty (30) years old).

22.    Plaintiff was treated differently than the other younger Operations Mangers.

3

23.    By way of example, Ms. Montgomery would be friendly with all of the Operations Managers, except Plaintiff.

24.    Ms. Montgomery would ask each Operations Manager individually how they were doing during meetings, except Plaintiff.

25.    Ms. Montgomery was distant and had very limited communication with Plaintiff, as compared to the other Operations Managers.

26.    Unfortunately, the entire team (including all Operations Managers) struggled to perform.

27.    However, solely Plaintiff was singled out and called out for the team's performance.

28.    By way of further example, Ms. Montgomery would send emails to the team every morning, reporting metrics and questioning productivity.

29.    However, only Plaintiff was constantly put on the spot, blamed, and criticized constantly for everyone's collective performance.

30.    By way of further example, all Operations Managers had staff who were not meeting expectations.

31.    However, only Plaintiff was singled out by Ms. Montgomery in this regard.

32.    Based on the foregoing, Ms. Montgomery unjustly and pretextually issued a write-up to Plaintiff on three (3) separate occasions for allegedly "not meeting metrics."

33.    Notably, Plaintiff was the only Operations Manager who was written-up, despite the fact that the other Operations Managers had the same alleged issues.

34.    In or around February 2025, shortly after one of the pretextual "write-ups,' Defendant transferred an Operations Supervisor, Francis Daceaus, to Plaintiff's team.

4

35.    At the time of transfer to Plaintiff's team, Ms. Daceaus was already under-performing.

36.    Ms. Montgomery expected Plaintiff to improve Ms. Daceaus' metrics.

37.    The aforementioned is another example in which Plaintiff viewed Ms. Montgomery's actions to be differential towards him and that he was being set-up for failure.

38.    In or around April 2025, Defendant transferred another under-performing Operations Supervisor, Marcel Jordan, to Plaintiff's team.

39.    At the time of transfer to Plaintiff's team, Mr. Jordan was already under-performing.

40.    Ms. Montgomery expected Plaintiff to improve Mr. Jordan's metrics.

41.    Plaintiff yet again viewed the aforementioned as Defendant setting him up for failure.

42.    A few weeks later, Plaintiff was suddenly placed on a Performance Improvement Plan (PIP) by Ms. Montgomery.

43.    Of the alleged "issues" outlined in the PIP was scheduling metrics, which surprised Plaintiff because this was one of the issues he had personally tried to raise awareness about with the Operations Supervisors now on his team.

44.    By way of example, Plaintiff tried to speak to the Operations Supervisors about how to improve staff metrics, but each time they became oppositional and refused to listen to Plaintiff.

45.    The Operations Supervisors would then instantly report Plaintiff's statements back to Ms. Montgomery.

46. Despite Plaintiff's best efforts to improve the team's performance and fulfill the alleged "issues" of the PIP, Ms. Montgomery was pretextually never satisfied.

47. Instead, Plaintiff was dismissed and unjustly criticized by both co-workers and Ms. Montgomery for performance issues that were beyond Plaintiff's control.

48. Shortly thereafter, Plaintiff filed a complaint/report against Ms. Montgomery with Workplace Relations (the platform Defendant used to file workplace complaints).

49. Plaintiff did not hear anything back from anyone whatsoever for several weeks.

50. Several weeks later, Plaintiff was solely informed that an "investigation" took place and that "no wrongdoing" was found.

51. Plaintiff was not involved in the "investigation" process and was otherwise not kept informed whatsoever.

52. Subsequently, Plaintiff contacted Defendant's Human Resources.

53. Plaintiff spoke with Human Resources Representative Joseph Zullo ("Mr. Zullo").

54. Mr. Zullo quickly shut Plaintiff's concerns down and dismissed Plaintiff.

55. Mr. Zullo stated that he "agreed with Ms. Montgomery" and that there was "no evidence to support my concerns."

56. Mr. Zullo further questioned Plaintiff's competence and asked, "Do you think that you're a good fit for the position?"

57. Plaintiff firmly responded "yes."

58. Plaintiff viewed Mr. Zullo's question catered to his age, being that Plaintiff was the oldest employee of Defendant and stated herein.

59. On or about June 25, 2025, Plaintiff was called into a meeting by Ms. Montgomery and Mr. Zullo.

6

60. Plaintiff was suddenly and unexpectedly terminated from his employment.

61. Defendant's alleged reasoning for Plaintiff's termination was "failure to meet standards."

62. Plaintiff was able to meet standards.

63. Individuals placed on Plaintiff's team were not meeting standards and had pre-existing performance issues.

64. Upon information and belief, these individuals were placed on Plaintiff's team so that Plaintiff's team would suffer.

65. Defendant pretextually blamed Plaintiff for the performance.

66. The PIP in which Plaintiff was pretextually placed on was never discussed in good-faith with Plaintiff.

67. In light of the foregoing, Plaintiff believes and therefore avers that alleged reason for his termination was pretextual and that the actual reason he was terminated was because of his age (61), in violation of the ADEA and the PHRA.

68. As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, promotions, benefits, earnings and earnings potential, loss of potential benefits, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, and damage to reputation.

**COUNT I**
**THE PENNSYLVANIA HUMAN RELATIONS ACT**
**43 P.S. § 951, *et seq.***
**DISCRIMINATION & RETALIATION - AGE**

69. Paragraphs 1 through 68 are hereby incorporated by reference as though the same were more fully set forth at length herein.

7

70.    At all times relevant hereto, Plaintiff was an employee within the meaning of the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §951, *et seq.*

71.    Pursuant to the PHRA, Defendant unlawfully and illegally discriminated against Plaintiff on the basis of his age at the time of his termination, sixty-one (61).

72.    Defendant acted with malice and with reckless indifference to Plaintiff's civil rights and emotional and physical well-being.

73.    Because of Defendant's unlawful acts, Plaintiff suffered damage in the form of, *inter alia*, loss of past and future wages and compensation, loss of reputation and standing in the professional community, personal humiliation, and embarrassment.

74.    As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, promotion benefits, earnings and earnings potential, and loss of other significant economic benefits.

75.    As a direct and proximate result of Defendant's illegal discrimination, Plaintiff has suffered and will continue to suffer harm, and is entitled to all legal and equitable remedies available under the PHRA.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant and grant the maximum relief allowed by law, including, but not limited to:

A.    Back wages, front pay, loss of fringe benefits, and raises in an amount to be determined at trial;

B.    Compensatory, exemplary, and/or punitive damages;

C.    Pre-judgment interest in an appropriate amount; and

D.    Such other and further relief as is just and equitable under the circumstances;

E.    Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable law.

## COUNT II
## AGE DISCRIMINATION IN EMPLOYMENT ACT
### 29 U.S.C. § 621, *et seq.*
### DISCRIMINATION & RETALIATION

76.    Paragraphs 1 through 75 are hereby incorporated by reference, as though the same were fully set forth at length herein.

77.    Defendant violated the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*, in that Defendant unlawfully and illegally discriminated against Plaintiff on the basis of his age at the time of his termination, sixty-one (61).

78.    Defendant acted with malice and with reckless indifference to Plaintiff's civil rights and emotional and physical well-being.

79.    Because of Defendant's unlawful acts, Plaintiff suffered damage in the form of, *inter alia*, loss of past and future wages and compensation, loss of reputation and standing in the professional community, personal humiliation, and embarrassment.

80.    As a result of Defendant's deliberate, unlawful, and malicious actions set forth above, Plaintiff has suffered loss of employment, promotion benefits, earnings and earnings potential, and loss of other significant economic benefits.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant and grant the maximum relief allowed by law, including, but not limited to:

A.      Back wages, front pay, loss of health and retirement benefits, raises, and bonuses in an amount to be determined at trial, but no less than one hundred and fifty-thousand dollars ($150,000.00);

B.      Liquidated damages;

C.      Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this action;

D.      Pre-judgment interest in an appropriate amount; and

E.      Such other and further relief as is just and equitable under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

By: _/s/ Andrew J. Schreiber_____
Andrew J. Schreiber, Esquire
Michael Murphy, Esquire
Eight Penn Center, Suite 2000
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103
TEL: 267-273-1054
FAX: 215-525-021
aschreiber@phillyemploymentlawyer.com
murphy@phillyemploymentlawyer.com
*Attorneys for Plaintiff*

Dated: July 29, 2026

10

## DEMAND TO PRESERVE EVIDENCE

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to his potential claims and his claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.